NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| FLEET NATIONAL BANK, ET AL., | ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No: 05-CV-1306 (JLL) |
| v. | ) ) | **MEMORANDUM** |
| WEBSCI TECHNOLOGIES, INC., ET AL., | ) ) ) ) | |
| Defendants. | ) ) | |

**LINARES**, District Judge.

      This matter comes before the Court on the motion of Fleet National Bank ("Fleet") and Bank of America Corporation[1] ("Bank of America") (hereinafter "Plaintiffs") for an order partially withdrawing the reference from the bankruptcy court for Plaintiffs' pending motion for citation of criminal contempt against Ramkrishna S. Tare ("Tare" or "Defendant") pursuant to 28 U.S.C. § 157(d) and Defendant's motion for an order to show cause that this Court cite multiple parties for criminal contempt. This matter is resolved without oral argument. Fed. R. Civ. P. 78. For the reasons stated herein, Plaintiffs' motion is GRANTED and Defendant's motion is DENIED.

**Background**

      Tare is the principal of a defunct technology company, WebSci Technologies, Incorporated ("WebSci"). On July 26, 2002, WebSci filed a bankruptcy petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Chapter 11 case")[2] and Tare filed an individual bankruptcy petition for relief under Chapter 7 of the Bankruptcy Code (the "Chapter 7

---

[1] Successor to FleetBoston Financial Corporation.

[2] Case No.: 02-38258 (RG).

case").[3] Shortly thereafter, Fleet filed proofs of claim in both bankruptcy proceedings, asserting that WebSci as a borrower and Tare as a guarantor, owed nearly $6 million to Fleet due from monies borrowed from Fleet's predecessor in interest.

On December 6, 2002, Fleet and FleetBoston Financial Corporation ("FleetBoston") commenced an adversary proceeding against Tare.[4] In their Adversary Complaint, Fleet and FleetBoston requested injunctive relief from the Bankruptcy Court to halt Tare and the remaining Defendants from further communications with Fleet, FleetBoston and related parties. (Adv. Compl. ¶ 53(c)). On December 11, 2002, the Honorable Rosemary Gambardella, United States Bankruptcy Court, District of New Jersey, issued an order to show cause with temporary restraints. These restraints continued throughout the adversary proceeding and were contained as permanent injunctive relief within an Order issued by Chief Judge Gambardella on October 7, 2003 (the "Adversary Injunction"). The relevant language of the order follows:

> Defendants WebSci Technologies, Inc., Ramkrishna S. Tare ... who receive actual notice of this Order by personal service or otherwise ... be and are hereby permanently restrained and enjoined from making any type of verbal or written communication to, or having any contact with, (i) FleetBoston Financial Corp., Fleet National Bank, or any of the predecessors, successors, affiliates, subsidiaries, or related companies of either (hereinafter, the "FleetBoston Companies"), or (ii) any director, officer, employee, or agent of the FleetBoston Companies, or (iii) the law firm of Buchanan Ingersoll Professional Corporation, except through the Princeton, New Jersey offices of Buchanan Ingersoll Professional Corporation ...

(10/7/03 Order). Tare appeared in court at the hearing which led to the entry of the Order, was served with the Order, and was consequently aware of its contents and existence. (Komuves Decl., ¶ 8). Tare filed an appeal of the October 7, 2003 Order, but later withdrew it voluntarily.

Subsequent permanent injunctive relief was ordered within the Confirmation Plan ("Plan Injunction") issued at the conclusion of Tare's Chapter 11 Bankruptcy proceedings. On May 18, 2004, the Bankruptcy Court issued an order confirming the Chapter 11 Plan. The Plan contained the following injunctive language:

> Upon the Confirmation Date, the Debtor, the Trustee, and each and every Creditor or party in interest of the Debtor's Estate ... who receive actual notice of this Plan and/or the Confirmation Order by personal service or otherwise (hereinafter, "Restrained Parties") shall be and are hereby

---

[3]Case No.: 02-38316 (RG).

[4]Adv. No.: 02-3794 (RG).

>    immediately: (a) preliminarily and permanently restrained and enjoined
>    from making any type of verbal or written communication to, or having
>    any contact with, (i) the Plan Proponent, FBFC, or (ii) any director,
>    officer, employee, or agent of the Plan Proponent or FBFC, or (iii) the law
>    firm of Buchanan Ingersoll Professional Corporation, except through the
>    Princeton, New Jersey offices of Buchanan Ingersoll Professional
>    Corporation ...

(5/18/04 Order at 27).

********

>    **FBFC** shall mean FleetBoston Financial Corp., Fleet, any of their
>    Affiliates, subsidiaries, or related companies, as well as their directors,
>    officers, employees, attorneys and agents, including without limitation, the
>    attorneys for Fleet as the Plan Proponent.

(5/18/04 Order at 5). Tare appeared in court at the hearing which led to the entry of this order, was served with the Order and was consequently aware of its contents and existence. (Komuves Decl., ¶ 11). Tare filed an appeal of the May 18, 2004 Order in the District Court, District of New Jersey, which remains pending before the Honorable William H. Walls, Civil Action No.: 04-3659.

The effective date of the Adversary Injunction was October 7, 2003. On April 1, 2004, FleetBoston merged with and into Bank of America. The effective date of the Plan Injunction was May 18, 2004. On December 28, 2004, Defendant mailed a letter (the "December Letter") to the Bank of America Board of Directors (the "Board") purportedly in his capacity as a "shareholder and former customer." (December Letter; Rocha Decl., Exh. A). The letter's stated purpose is to inform the Board of "compelling evidence of continued bribery by Fleet (now Bank of America)." (Id.) (emphasis original). Defendant demands that the Board take remedial actions to correct the alleged behaviors and that "in the event that you do not take any action, I will have no other alternative but to file a separate action." (Id.). Further, Defendant requires that the Board provide a response directly, and "not through the law firms named in this letter."[5] (Id.). On January 3, 2005 Defendant mailed a letter (the "January Letter") to the Honorable Judge William H. Walls, District of New Jersey, and served copies on the following members of the Board: O. Temple Sloan, Jr., Steven McMillan, Donald E. Guinn and Frank Dowd, IV. (Komuves Decl., Exh. H). The January 3, 2005 correspondence to Judge Walls included allegations that certain parties and attorneys were criminally liable for various acts, including Fleet and certain members of the Board. (Id.).

Plaintiffs allege that the December and January Letters to members of the Board were in

---

[5]The law firms named in the letter were Buchanan Ingersoll, PC and Mellinger, Sanders & Kartzman, LLC.

direct violation of the Bankruptcy Court's Adversary and Plan Injunctions. Plaintiffs then filed contemporaneous motions for citations of contempt against Defendant in the Bankruptcy Court on February 4, 2005 in both the Chapter 11 and Adversary proceedings. Now, Plaintiffs wish to institute a criminal contempt proceeding against Defendant and request the District Court to withdraw the reference from the Bankruptcy Court for this limited purpose. Defendant filed a purported "cross-motion" in the District Court requesting the Court to institute criminal contempt proceedings against a multitude of parties but has not first filed such motion with the bankruptcy court.

## Discussion

Since "[c]riminal contempt is a crime in the ordinary sense," an individual alleged to have committed criminal contempt is "entitled to all the criminal protections guaranteed by the United States Constitution, including the right to be presumed innocent, to be proven guilty beyond a reasonable doubt, to refuse to incriminate oneself, the right to counsel, and, in cases where imprisonment for more than six months is being sought, the right to a jury trial." In re Wallace, 311 B.R. 601, 604 (N.D.Okla. 2004) (citation omitted). Further, since criminal contempt is a violation of the law, such proceedings are "considered separate from the case in which the order was violated and is between the public and the contemnor." Id. at 605 (citations omitted).

Although the parties have briefed the merits of their respective claims and defenses, the Court will not presently consider them as they are irrelevant to the Court's determinations. The determinations to be made at the present moment are whether:

1. The District Court will grant Plaintiff's motion and withdraw the reference from the bankruptcy court for the limited purpose of considering Plaintiffs' motion for citation of criminal contempt.

2. The District Court has jurisdiction over Defendant's motion for an order to show cause.

**1. Withdrawal of the Reference**

Plaintiffs request the Court to partially withdraw the reference from the Bankruptcy Court for Plaintiffs' motion for citation of criminal contempt.[6] Plaintiffs request the Bankruptcy Court, and alternatively, this Court, to find Defendant in criminal contempt for violating two separate permanent injunctions entered in the above referenced Chapter 11 case and adversary proceeding.

Although district courts often prefer that bankruptcy courts hear all proceedings arising out of an action originating in such courts, 28 U.S.C. § 157(d) permits a district court to

---

[6]From his submissions to the Court, it does not appear that Defendant opposes withdrawal of the reference. To the extent that Defendant opposes the merits of Plaintiffs' motion for contempt, these arguments are not presently relevant.

"withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." Id. Thus, on motion of a party, the party must show "cause" before a district court will withdraw the reference. In re System Freight, Inc., 1991 WL 33150 (D.N.J. 1991).

Plaintiffs assert that Defendant's December and January Letters constitute "a willful and repeated violation of the injunctive orders of the Bankruptcy Court;" conduct which rises to the level of criminal contempt. (Pl. Mem. Withdrawal, p. 6). The Court agrees with Plaintiffs that the action involves criminal, rather than civil, contempt. Although the contours of the two forms of contempt are open to interpretation, "a contempt sanction is considered civil if it 'is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.'" Int'l Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 827-28 (1994) (quoting Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 498 (1911)). Here, Plaintiffs seek to punish Defendant for his alleged violations of the terms of the Adversary and Plan Injunctions. Thus, the Court determines that Plaintiffs appropriately term their action as one for criminal contempt.

To show cause why this Court should withdraw the reference, as required by 28 U.S.C. § 157(d), Plaintiffs assert that Defendant is entitled to a jury trial for the criminal contempt proceeding and that the Bankruptcy Court does not have the authority to conduct criminal jury trials. See In re Pruitt, 910 F.2d 1160, 1168 (3d Cir. 1990) ("the statute requires in clear terms that cause be shown before the reference can be withdrawn"). In considering whether cause exists, the Court "should consider the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." In re Pruitt, 910 at 1168.

Section 401 of Title 18 of the United States Code provides a court of the United States with the "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as – ... (3) disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401. Since the statute leaves the type and amount of punishment to the court's discretion, Plaintiff argues that it is possible that Defendant will be sentenced to a term in prison greater than six months, entitling Defendant to a jury trial conducted by the District Court.[7] (Pl. Mem. Withdrawal, p. 8). Plaintiff argues that this

---

[7]Section § 157(e) provides that "if the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district judge and with the express consent of all the parties." 28 U.S.C. § 157(e). Although the district court can expressly grant the bankruptcy court with jurisdiction to hold a jury trial, all parties must also consent. Here, Defendant has made various allegations of misbehavior against Judge Gambardella. Thus, the Court will not presume that Defendant would be apt to tender his consent to a jury trial before Judge Gambardella, limiting § 157(e)'s relevance.

establishes the requisite cause needed for withdrawal of the reference.

This Court does not need to reach the question of whether the Bankruptcy Court possesses the "authority" or "jurisdiction" to conduct a jury trial in a criminal contempt proceeding, rendering withdrawal mandatory.[8] Rather, the Court chooses to exercise its discretion as provided in 28 U.S.C. § 157(d) and withdraw the reference from the Bankruptcy Court for Plaintiffs' pending motion for citation of criminal contempt. Although withdrawal of the reference may not promote uniformity in bankruptcy administration, it will expedite the bankruptcy process. See In re Pruitt, 910 F.2d at 1168. If the Bankruptcy Court were to keep the reference and conduct the contempt proceedings before a jury, the parties would likely appeal to the District Court. By withdrawing the reference and conducting the proceedings in the District Court from the beginning, judicial economy is furthered. In light of the foregoing, the Court determines that withdrawal of the reference for Plaintiffs' motion for citation of criminal contempt is proper. Plaintiffs' motion for withdrawal of the reference is hereby granted.[9]

## 2. "Cross-Motion" for Order to Show Cause

Defendant filed a "cross-motion" with this Court seeking an order to show cause why certain named parties should not be held in criminal contempt of the District Court.[10] However, to date, Defendant has not filed a motion to withdraw the reference from the Bankruptcy Court with regard to this motion. Rather, Defendant relies on his pro se status and expects that this Court will allow his "cross-motion" to proceed.[11]

Rule 5011-1 of the Local Rules of the United States Bankruptcy Court, District of New Jersey, requires that a "motion for withdrawal of the reference of the case or proceeding shall be filed in the bankruptcy court ... [a]ll such motions are then to be immediately transmitted to the

---

[8] See Wallace, 311 B.R. at 606, n. 15 (examining differing judicial approaches to question of whether a bankruptcy court has jurisdiction over a criminal contempt proceeding).

[9] The Court reiterates that the withdrawal of the reference is only partial.

[10] The full title follows: "Cross Motion to Seek an Order to Show Cause Why – Gary N. Marks, Richard Honig, Steven Kartzman, Louis T. DeLucia, Flavio Komuves, Buchanan Ingersoll, and Bank of America – Should Not be Held in Criminal Contempt of the Court For Obstructing the Due Administration of Justice and/or Have Criminal Proceedings Initiated Against them for Bribery, Perjury, Mail/Wire Fraud, Forgery, Filing of False Affidavits and Violations of Other Federal and State Criminal Statutes."

[11] Although the Court is missing Page 5 from Defendant's Reply to Movant's Response to Cross-Motion, the remainder of the submission seems to indicate that Defendant asks the Court to simultaneously consider his cross-motion as a motion to withdraw the bankruptcy court's reference.

6

district court." Id. (emphasis added). Here, it is apparent that Defendant has not first filed his motion in the bankruptcy court, nor has Defendant made a motion for withdrawal of the reference in the Bankruptcy Court as required by Rule 5011-1. In light of Defendant's failure to comply with the Local Rules, the Court will not reach the merits of his "cross-motion."[12] Defendant's motion for an order to show cause is hereby denied.

## Conclusion

For the foregoing reasons, Plaintiffs' motion for withdrawal of the reference from the Bankruptcy Court is hereby GRANTED. Defendants motion for an order to show cause is hereby DENIED.

This Memorandum accompanies an Order dated December 29, 2005.

**DATED**: January 2, 2005 /s/ Jose L. Linares
United States District Judge

---

[12] If Defendant wishes to pursue such a motion, the Court directs him to first file the motion with the bankruptcy court and then file a motion to withdraw the reference.